on behalf of Alberto Garcia-Jimenez. I'd like to reserve two minutes for rebuttal. The sole issue in this appeal is whether a conviction under New Jersey Statute 2C-12-1B1 is a categorical match for generic aggravated assault under the United States Sentencing Guidelines 2L1.2. It is not. The New Jersey statute is overbroad for two independent reasons. Either of which demonstrates that Mr. Garcia-Jimenez's sentence was too long. The first is that the New Jersey statute is one of no more than 13 statutes that define aggravated assault to include a mere attempt to cause serious bodily injury with no other additional aggravating factor. The second reason is it is only one of 15 or 16 that allow a conviction of an aggravated assault based on any type of recklessness. If my math is correct, on either of these issues, the statute is categorically overbroad. Are you also arguing or are you not that New Jersey's attempt definition is not generic? I am also arguing that. That's separate. That's separate only to the extent that the government, which they didn't say in their theory, that a completed New Jersey assault that has one component that can be committed by attempt is an attempted aggravated assault. If that's where their theory, then that wouldn't fly either because New Jersey attempt is categorically overbroad. So there's really three reasons why the New Jersey statute is overbroad. Two of them involve completed aggravated assault. One involves attempted aggravated assault. But he wasn't convicted of attempted aggravated assault. He was convicted of aggravated assault, which has an attempt theory within it. So it's different from if he were actually convicted of an attempted aggravated assault. I don't know if that answers your question. But the same problem would still apply, wouldn't it, because an attempted attempt within the aggravated assault theory is still the same attempt, I assume. Yes. It's still a New Jersey attempt. Yes. Okay. All right. Yes. So that I would consider sort of a subcategory of the first reason why the statute is overbroad. The government doesn't challenge my numbers with regard to what the State statutes require. They rely solely on the argument that Esparza Herrera and Marcia Acosta resolve this and say that any assault committed with extreme indifference recklessness is aggravated assault. And that argument suffers from? Ms. Chen, the judge said even if he was wrong about the classification of the aggravated assault, he would have still sentenced 46 months because he wanted to teach Mr. Garcia Jimenez a lesson about coming back to the country. So with the guidelines now being advisory after Cardi and Booker, why is that wrong? Your Honors, this Court has never, I haven't found a single case in which this Court has found error harmless in this sort of context where a Court imposed a sentence based on the incorrect calculation of the guidelines. Here, if the guidelines had been calculated correctly, it would be 10 to 16 months. The mere statement that I would oppose the same sentence even if I got the guidelines wrong does nothing to cure the significant procedural error of miscalculating the guidelines. But what do we do with a very clear statement? I was struck by the same thing that Judge Baio was struck by. The judge says even if I'm wrong and these guidelines are not the appropriate guidelines, I'd sentence you to exactly the same thing. So I think there's very little doubt in the judge's mind, at least at that time, that were the calculations from under the guidelines incorrect, the judge would do exactly the same thing. I understand that, Your Honor. But if this Court were writing on a blank slate, that might fly. But this Court has repeatedly said that a simple statement that I would impose the same sentence of whatever, regardless of what the guidelines are. And certainly, you say you haven't found any cases. I'm sure there are some cases, but they may be in different contexts in which the judge said. I mean, for example, when you have mandatory minimums, there are some cases where he said, well, I would have done the same thing anyway. And that seems to be good enough. I mean, the problem here, I guess, but you're right, there are some cases saying you can't do it, and they are somewhat similar to this in that, I mean, the problem here is that it's sort of almost not plausible. Where would he have come up with this time period if he hadn't miscalculated the time period? He gave him the low end of the guideline range of 46 to 57 months. If he had properly calculated the guideline, it would have been three times the high end. And he gave no specific reasons that would justify this extent of a departure. This is pretty clear. Kennedy, but he did. He said, I want to send a message to Mr. Garcia-Jimenez that he should not come back into this country again. And it's going to take 46 months to so that message sinks in. Isn't that enough under 3553A? I don't know that it's enough under 3553A. The Supreme Court and Carty are quite clear that the Court needs to justify the extent of the departure. So a statement that I'm going to impose the low end, and I think that's a reasonable sentence, is quite different from saying I'm going to impose three times the high end. And, in fact, he didn't say that's sufficient but not greater than necessary to meet the statutory purposes of sentencing. What he said is that's reasonable. Kennedy, if we vacate and re-sentence and send it back to the judge, can't he go back into his memory and come out with the same reason, saying I've really considered this, and I've looked into his background, and he's a repeat offender, and I want to make sure that he never comes back to this country, and to send him a message and 46 months again? Would we have to reverse that? It's possible the Court could do that, first of all. It's not certain that the Court would do that. I have won many reversals, and the Court generally applies the guideline range they recalculate on remand. But even if he did do that, then that the defendant would have an appeal, and the appeal would be, is this extent of a departure from a 10- to 16-month range to 46 months reasonable under the circumstances, and did the Court provide a sufficient explanation? So I think that argument really is that if the guideline disparity is fairly minor, we might say that the judge here sufficiently explained it. But with this enormous, multiple times variation of the guideline range, we would expect a greater, we would expect and can insist upon a greater explanation? Yes. Is that the argument? I think that is the argument, and I think that's what this Court said. And if we need to go so far, could we simply say we're not sure that the district judge actually contemplated this greater disparity, then we will remand for resentencing with the appropriate guideline? And which are the cases? Acosta-Chavez, is that one of them? Excuse me? Which are the cases that say this? That say this? Munoz-Camarena is a, is one of the cases where it has a footnote, and it sort of sets forth in what, in what cases this type of error might be harmless. And it gives five examples, and this doesn't fit within any one of those examples. And then further, I cited cases in my reply brief. Munoz-Camarena tends to be the one that they all refer to. But there's a case, Acosta. Right. And then there's the case, there was another one that was lower. Those are the two that I cited, Acosta and Munoz-Camarena. Perhaps in my rebuttal I could be more clear on those. Okay. Let's hear from the government. Good morning. May it please the Court. My name is Lawrence Lee, Assistant U.S. Attorney, District of Arizona, on behalf of the government. Your Honor, the government does rely on the Esparza-Herrera case extensively in stating that the New Jersey aggravated assault statute, 2C-12-1B1, does fit categorically with the definition of aggravated assault within 201. But the case doesn't quite hold that, does it? That's right, Your Honor. But I think it's a reasonable inference from the guidance that we've gotten in the Esparza-Herrera case and the Marcia Acosta case. Marcia Acosta just quotes Herrera. So back to Herrera. And all it says is at least. I'm sorry, ma'am? And all either of them say is at least. At least, that's right. And at least always carries with it a negative pregnant. At least, but not necessarily more or, you know, all it says is at least. Exactly, Your Honor. There's room for more words there. And, Your Honor, that's what the government, I think, is an absolutely reasonable inference for guidance from the— Ms. Chan has come up with, that if you actually looked at the question, you would find that only 15 States have this low a level of mens rea. Your Honor— Your brief doesn't dispute it, right? The brief does not dispute it. However, I think that argument is precluded by the Esparza-Herrera case. That's her only position. It's not that there's anything wrong with her numbers. That's right. And those numbers were never produced in Esparra or Murcia or Acosta because there was no reason to, right? Well, I believe— No one's ever done—looked at this question. No opinion of this Court exactly looks at the as-between reckless with extreme disregard and specific intent what the fallout is in the States. No, Your Honor, but I think the Esparza-Herrera case hits the nail, though, with the at-least language. It at least includes the mens rea of recklessness with extreme indifference to human life. With the—if a statute includes that sort of mens rea, it should fall categorically within a match of the aggravated assault generic definition. But if you're saying that, that means that we should look at that Herrera case and that it held or would have held despite these numbers. But it didn't have this precise question in front of it, and it didn't have these precise numbers in front of it. So how am I supposed to read the case to control us on that point? Well, Your Honor, the—what the Esparza-Herrera case—it says the generic definition has at least, under circumstances manifesting extreme indifference to human life, that that encompasses the generic definition of aggravated assault. And the New Jersey statute has that exact same language in its statute. Sotomayor, I suppose we didn't think that. Then what? What — first of all, what about the attempt point? And I gather there are two attempt points. Suppose we agreed with you, okay? There are two attempt points. Yes, ma'am. One of them is that a very small number of States have attempt as part of the crime of assault. Yes. Is that — do you dispute that? No, Your Honor. However, I think what the defendant is doing with the attempt argument is, it's almost apples to oranges, because he, the defendant, was not convicted of attempted aggravated assault. He was convicted of aggravated assault. Now, attempted — Which attempt is one of the elements, possible elements. One of the possible elements. But when you're looking at — well, let me start with the — let me — How can you tell he was not convicted of attempted aggravated assault? Because an attempt in New Jersey is an aggravated assault, right? For that statute, Your Honor, so there's — there is — there are — there's a separate attempt statute within New Jersey, which was briefed, which is — This statute says that whether you complete the act or whether you attempt the act, you've committed aggravated assault. That's correct. Now, with that, however, the attempt language is not broken out into separate elements within the aggravated assault statute. If you look at the New Jersey statute, there are 11 different ways which you can commit aggravated assault. Now, the one that we're looking at, where the defendant was convicted, was B-1. Now, B-1 encompasses not just attempt, but encompasses attempts to cause serious bodily injury to another, or causes injury purposely, or knowingly, or under circumstances manifesting extreme indifference to the value of human life recklessly, causes such injury. And that is — that's just B-1. Now, there's, you know, B-2 through 11 as well. So what — Are you contending that there's a modified categorical issue here? I don't think so in this case. All right. So then it's over. So then if attempt is not part of generic aggravated assault, it's an overbroad statute. Well, if he's convicted of the B-1, he's convicted of attempts, causes, knowingly under circumstances manifesting extreme indifference. Correct. So therefore, if — let me — am I wrong to say that if attempt is not part of generic aggravated assault, then this is an overbroad statute and can't be counted? And if I'm wrong, why am I wrong? Because the attempt language, Your Honor, in this — in this statute, this B-1 is tied to all of these other — By an or. By an or. So if he attempted whatever it is, he could have been convicted. So it's an overbroad statute unless there's — unless that's okay. Well — Is it okay? That — I don't think so, Your Honor. And this — this is something that the — the jury instruction, from my understanding, is — is not — does not parse it out. It's just you can be found guilty of B-1 if you attempt — and it doesn't have to be a special person. This makes it worse under our — you see what kind of — not very at home with this kind of analysis. Yes, Your Honor. With the categorical — the whole categorical — if we can call it that. But — but — Yes, Your Honor. Essentially, if — if it was A or B or C in any of them — Right. — or invalid, then it's an overbroad statute. And unless you can meet the modified categorical approach, you can't do it. So let's — unless you have a reason to tell me why that's wrong, except to keep repeating that it is wrong, then can we go on from there and tell me why it's okay to have the attempt in here? Yes, Your Honor. Just — the government's position is that the B-1 is — it's either an all or nothing. It's not — a jury finding does not have to be — You don't have a — you don't have a reason. If it just said attempt, it would be no good. Is that what you're agreeing to? Yes, Your Honor. All right. What about the harmlessness question? I'm sorry, Your Honor? What about the harmlessness question? Your Honor, I think that the case, as the defendant cited, basically says that the district judge must give a reason for, and the magic word is extent. Do we not have at least two, maybe three cases which address almost exactly this and say that just because the government says — the judge says he would have done the same thing anyway if he miscalculated, it's no good? Do the cases not say that? That's — the government agrees with that. However, I think the facts in this case, the record shows that the district judge did give a reason for the extent of any sort of variance if — Is that what Munoz-Camarino says? Do they give more or less than a Munoz-Camarino? That is the Acosta-Chavez case, Your Honor. I'm sorry, what? Acosta-Chavez case. I was talking about Munoz-Camarino. And the Munoz-Camarino, yes, Your Honor, the district court, that one says almost the same thing. You have to explain the extent of the variance from the correct guidelines range. And in this particular case, the district court, through the pleadings from below, was aware of the argument for the 10- to 16-month guideline range. However, the district court found that it was a categorical match, but also explained that even if it wasn't, the extent of her variance was based upon — I'm looking at the excerpts of — Are we sure that the district judge, in saying that the same sentence would be imposed even if the guideline range were here being miscalculated, which I think we may be about to hold it was, that the district judge was trying to explain that he would give this even if the variance were this large? What do we know that he was thinking of as to where the proper guideline might have been from which he would then have deviated? So she, Your Honor, was aware of the proposed guideline range through the objections of counsel and responses of counsel prior to sentencing. So the 10- to 16-month range was advocated for on behalf of the defendant from the sentencing objections. So that number was out there with the district. Right. Well, in Acosta-Chavez, they — he was given a below-guideline sentence of 30 months. The guidelines were improperly calculated. He stated it would have imposed — the district court said it would have imposed the same sentence even if it had found the correct guideline range of 8 to 14. He said that within the unenhanced guidelines range were not sufficient — that guideline range would not sufficiently address the statutory factors of sentencing, particularly given the nature of the prior conviction, the fact that it's a sex crime involving a minor child. So how is that different from what happened here? So he gave reasons. Yes, Your Honor. He didn't specifically give reasons about the extent of the difference. Right. But he gave reasons. Right, Your Honor. And I think in this particular case, the extent — and I'm looking at excerpts of record 53 and 54, where the district court did consider not just all the 3553A factors, but the specific history and characteristics of this particular defendant in making the extent of the variance, even if she was wrong on the guidelines calculation, justified, Your Honor. In some way different than an Acosta Chauvin's? I think just — yes, Your Honor. I think what — what we have here in this particular case is the district judge looking at not just the statutory factors, but the specific history and characteristics of this particular defendant, and also having that — the 10 to 16-month argument within the district court's mind when giving this particular sentence, Your Honor. But I have to say, I'm having trouble getting around our case law, even though it does appear to me that Judge Jorgensen, upon remand, may very well do exactly as she said she would do. Yes, Your Honor. And I think, you know, that the courts never really define what extent really it would encompass. So given that particular posture, yes, if this court were to find that the extent was not adequately explained, Judge Jorgensen could absolutely list out more completely whatever factors. Or, in reflection, might say, you know, if I really have to give a lot more reasons, maybe I'm going to think about this again. That's absolutely possible. What did the district court say about the reasons? For the — if the guidelines were wrong, if her guideline calculation was wrong. All I see her saying is, I would do it. But where does she say why? She says — she's looking at the sentence. She finds that the — and I'm looking at the exercise of record on page 53. That includes your — in finding that the 46 months is appropriate, that includes your criminal history, which the court finds paragraph 21, and paragraph 21 of the criminal history. I thought she said — are you reading this sentence in which she says, due to how the criminal history is treated under the advisory guidelines? Is that what you mean? I'm sorry, Your Honor? What language are you relying on has her explanation? I'm relying on the bottom of exercise of record, page 53, Your Honor. Would you read it? I don't have that directly in front of me at the moment. Yes, Your Honor. She calculates at line 19. So that gives us a guideline range with your criminal history category of 46 to 57 months. The court finds that that's a reasonable range to satisfy all the statutory factors of sentencing, including history and characteristics, and that includes your criminal history, which the court finds paragraph 21, not even relying on that summary, which perhaps comes from police reports, but relying on the police. And where's the part where she explains why she would do the same thing even if the guidelines were different? Your Honor, if I may have one moment. Your Honor, that would be excerpts of record, page 56. She states, and I also should make a record that in the event that the court incorrectly calculated the guidelines and the level 16 enhancement, if for some reason that was, that is incorrect and it's actually treated differently or less seriously than the guidelines, the court in its discretion is to do that. I know that, but what is the reason why? Does she give any reason why she would do that, even if it was four times the guidelines? She doesn't. Well, I think she says it from before when she's considering his criminal history and what kind of felony he actually had. But she never explains why she would do it if the guideline was wrong. I think what she says, Your Honor, is a few pages prior, she says that she's saying the 46 months is appropriate because he basically, he stabbed somebody near the heart, a very serious felony. And that's on the excerpts of record, page 53 and page 54, Your Honor. So she says two things. The 46 months is necessary to impress you not to come back in the country again. And on ER 56 line 18, due to how the criminal history is treated under the advisory guidelines, those are the two reasons she gave for departing upwards in case her computation of the sentencing guidelines was in any respect incorrect. Yes, Your Honor. And you think that's sufficient under the Camarena case? Munozka-Marino? Yes, Your Honor. And looking at excerpts of record. Well, you see, the problem with Munozka-Marino says a district court must start with a recommended guideline sentence, adjust upward or downward from that point and justify the extent of the departure from the guideline sentence. And it uses the word must, must. I don't see that she ever started with the recommended guideline sentence of 12 to 16. And 16 months, Your Honor. Well, I think with She mentioned it, but she didn't start and she didn't go upwards. So if Munozka-Marino lays out the required procedure, right, are we in any position to do anything but vacate and remand for resentencing? Well, Your Honor, I actually, I think she did. She found the 46 to 57 months as the guidelines in this particular case. But she was also absolutely aware of the 10 to 16 month guideline range. Will you indulge me to this extent? If the correct guideline sentence is 12 to 16 months because the New Jersey statute is not an aggravated assault prior. Right. If that's true. Right. We all agree that she didn't start at 12 and 16. I wouldn't use the word start, Your Honor. But I Well, a district court must start. That's the language of the case. And she didn't do that. Yes, Your Honor. I might also point out, the district judge says, stabbing somebody in the heart is a very serious felony. Now, that might have been just rhetorical, but of course, he did not stab someone in the heart. Right. He stabbed someone near the heart. Right. So it may be that on reflection, she might say, you know, I guess I was wrong. He didn't stab this victim in the heart. That's absolutely possible, Your Honor. Thank you. Thank you, Your Honor. Just very briefly, I want to reiterate. It's the government's burden in this case to prove that the error was harmless and that we just need to show that it's not, well, the standard is that there needs to be a reasonable probability of a different result. We don't need to prove that there would be a different result. They need to prove that there's no reasonable probability of a different result. As Judge Fletcher made quite clear, there's a reason we ask the Court for reasons, because in the process of having to lay out reasons for why you're departing to three times the high end, it's possible that the Court might reconsider. And finally, I would just respectfully disagree with the idea that this Court gave two reasons why she would give a sentence that would be so far above the properly calculated guideline range. I think the first reason, about to impress upon you that you shouldn't come back, she said that really in the context of the guideline range. She said that that is the low end of advisory guideline range, and the Court finds that this is an adequate sentence, and that's when she says that. It's not in the context of saying, and even if the guidelines were 10 to 16 months, I would depart up to three times. And then with regard to the criminal history, I think what she was really trying to say is, when she referred to criminal history, and that's on page 56, was if I got the criminal history category wrong, I would still do the same thing. But she doesn't actually give a reason why she would do the same thing. If the Court has no further questions, I would submit. Okay, thank you. Case just argued, United States v. Garcia. Jimenez now submitted for decision.
judges: Fletcher, Berzon, Bea